## White v. McGill
*[Cite as 2 AOA 52]*

*Case No. 11682*
*Montgomery County, (2nd)*
*March 20, 1990*

*14th Amend. U.S. Const.*
*Art. I, Section 2 Ohio Const.*
*R.C. 3307.48*

Jeffrey M. Silverstein and James L. Jacobson,
*Jeffrey M. Silverstein and James L. Jacobson, 1700 one First National Plaza, Dayton, OH 45402, Attorneys for Plaintiffs- Appellants.*

*J. Bernard Carter, 1526 West Third Street, Dayton, OH 45407, Attorney for Defendant-Appellee William McGill, Sr.,*

*Catherine Cola, Assistant Attorney General, 30 East Broad Street, Columbus, OH 43266, Attorney for Defendant-Appellee State Teachers' Retirement System.*

FAIN, J.

Plaintiff-appellant Mildred White appeals from a summary judgment entered in favor of defendant-appellee The State Teachers' Retirement System of Ohio (STRS). White first contends that the trial court abused its discretion by permitting STRS to file an untimely motion for summary judgment. We conclude that the trial court was within its discretion to do so.

White next contends that the trial court erred in granting summary judgment to STRS. For the reasons that follow, we agree that summary judgment was improvidently granted.

Finally, White contends that the trial court should have granted her own motion for summary judgment. For the reasons that follow, we conclude that White failed to establish there was no genuine issue of material fact and that she was entitled to judgment as a matter of law. Accordingly, we conclude that the trial court should not have granted either party's motion for summary judgment. The summary judgment rendered in favor of STRS will be reversed, and this cause will be remanded for further proceedings.

I

White and defendant-appellee William McGill, Sr. are the divorced parents of Phyllis McGill (Decedent), who died in 1988. The decedent was a school teacher and contributor to the STRS.

In 1973, the decedent designated her mother, White, to be the primary beneficiary for any survivor benefits that might become payable with respect to the decedent's STRS account. In 1979, the decedent married. There are no children of this marriage, and the decedent became divorced in 1982.

Upon the death of the decedent, STRS determined that her survivor benefits, in the amount of approximately $30,000, were payable to McGill as the decedent's older parent.

White brought this action for a declaratory judgment. In her action, White seeks a determination that R.C. 3307.48(A), which provides for the automatic revocation of a designation of beneficiary upon an STRS contributor's marriage, and the provisions of R.C. 3307.48(B) (4) and (C) (3) providing for the payment of survivor benefits and accrued, but unpaid benefits, to the "older parent" and "elder parent," respectively, violate both the United States and Ohio constitutions.

White filed a motion for summary judgment the day before a court-imposed deadline for motions for summary judgment. A month later, STRS filed a cross-motion for summary judgment. White moved to strike STRS's motion for summary judgment upon the ground that it was not timely filed, but the trial court overruled White's motion to strike.

On the merits, the trial court granted STRS's motion for summary judgment, denied White's motion for summary judgment, and entered judgment accordingly.

From the judgment against her, White appeals.

II

White's First Assignment of Error is as follows:

"The court erred in overruling plaintiff/appellant's motion to strike defendant/appellee state teachers' retirement system's motion for summary judgment."

White sought a determination that the statutory provision for the automatic revocation of a beneficiary designation and the provision for the payment of STRS benefits to the older parent of the deceased contributor were unconstitutional and unenforceable. White filed a timely motion for summary judgment, one day before a court-imposed deadline for motions for summary judgment. Although STRS never requested an extension of the deadline, and no extension was granted, STRS filed its own motion for summary judgment, together with a memorandum in opposition to White's motion for summary judgment, twenty-eight days after the deadline for motions for summary judgment, as extended. A trial court has discretion to consider a motion for summary judgment, even though the motion has not been timely filed. *Indermill v. United Savings* (1982), 5 Ohio App. 3d 243, first paragraph of syllabus. Factors that might influence a trial court to consider an untimely motion for summary judgment, in the exercise of its discretion, would include the perceived amenability of the case to summary judgment, as well as the absence of any prejudice to the parties against whom summary judgment is sought.

In the case before us, the trial court, in its decision and order overruling White's motion to strike STRS's motion for summary judgment, indicated that although it would ordinarily strike an untimely motion for summary judgment, it had reached conclusions of law favorable to STRS' position in connection with its consideration of White's motion for summary judgment, so that there was no reason to let the case go to trial.

We conclude that this was an appropriate exercise of the trial court's discretion.

White' First Assignment of Error is overruled.

## II

White's Second and Third Assignments of Error are as follows:

"The trial court erred in granting summary judgment to defendant state teacher's retirement system.

The trial court erred in overruling plaintiff's motion for summary judgment."

In connection with both of the foregoing Assignments of Error, White has made two arguments, each of which will be considered below.

## A

White first challenges the automatic revocation of the designation of a beneficiary provided for in R.C. 3307.48(A), which is as follows:

"Should a contributor die before service retirement, his accumulated contributions shall be paid to such beneficiaries as he has nominated by written designation signed by him and filed with the state teachers retirement board prior to his death. The nomination of beneficiary shall be on a form provided by the retirement board. The last nomination of any beneficiary revokes all previous nominations. *The member's marriage, divorce, marriage dissolution, legal separation, or withdrawal of account or the birth of his child or his adoption of a child shall constitute an automatic revocation of his previous designation.*" (Emphasis added.)

By its terms, the underscored provision operated to revoke the decedent's designation of White, her mother as her beneficiary, when the decedent married. The decedent never executed any subsequent designation of beneficiary.

White's attack on the automatic revocation of beneficiary provision seems to be that it is "unfair, discriminatory, and arbitrary."

We cannot follow White's argument that the automatic revocation of beneficiary provision is discriminatory. With respect to her claim that it is unfair and arbitrary, we agree with the trial court that there is a rational basis for the provision for the automatic revocation of a prior designation of beneficiary upon the marriage of the contributor. The provision appears to be nothing more than a legislative recognition that many contributors, upon marriage, would want any prior designation of a beneficiary to be revoked in favor of the statutory provision of benefits to the contributor's surviving spouse. If a particular contributor should, notwithstanding her intervening marriage, desire that a previously designated beneficiary, such as a parent, should be the person to receive benefits in the event of her death, the contributor may easily so provide by simply re-executing a written designation of beneficiary.

We agree with the trial court that the automatic revocation of beneficiary designation serves a rational purpose, and works no hardship upon the contributor.

## B

White next contends that the provisions in R.C. 3307.48 (B)(4) and (C)(3) that death benefits and accrued, unpaid benefits with respect to the STRS account of a deceased contributor shall be paid to the older parent (if there are no persons with higher priorities under the statute) offends the Equal Protection Clause of the Fourteenth Amendment of the United States, and Article I, Section 2, of the Ohio Constitution, in that this provision, while superficially gender-neutral, effectively discriminates against women, since, among most married couples, the man is the older spouse. In support of her motion for summary judgment, White attached Vol. 37 No. 1, Supplement, *Monthly Vital Statistics Report*, dated April 29, 1988, published by the United States Department of Health and Human Services. This publication contains a number of tables of data concerning the ages of spouses. Table 7 is perhaps the most significant, and is reproduced as an the appendix to this opinion. In that table, the median and mean ages of brides and grooms married in each of the years 1963 through 1985 are shown. In every one of those years, the median age of the groom was at least 1.9 years older than the median age of the bride. In most of those years, the median age of the groom was more than two years greater than the median age of the bride. In Table 8, the mean age of grooms in Ohio in 1985 was 2.7 years greater than the mean age of brides.

No evidence was presented to rebut the evidence referred to above. White contends that the statistical evidence that she submitted in support of her motion for summary judgment gives rise to an inference, at least, that in a significant majority of cases the husband is older than the wife. This is an inference that would not come as a surprise to most people, since it is generally assumed that in most cases the husband is older than the wife.

Indeed, even if the spouses included in the statistics reported in Table 7 were otherwise randomly matched, the difference in median age in excess of two years as between husband and

wife would be bound to cause the percentage of marriages where the husband is older than the wife to be significantly greater than the percentage of marriages where the wife is older than the husband. In view of the known fact that, with notable exceptions, people tend to marry spouses who are not greatly different in age, the percentage of marriages in which the husband is the older spouse would very likely be overwhelming in order to produce the kind of disparity in the median ages of husband and wife found in Table 7.

White is, of course, entitled to the benefit of all reasonable inferences in her favor, with respect to STRS's motion for summary judgment. It is a reasonable inference from the evidentiary material submitted by White, that the husband will be the older spouse in the overwhelming majority of married couples.

White contends, simply, that the provision for the payment of benefits to the older parent violates the Equal Protection Clause because it unfairly discriminates against women.

Although the issue is close, we are inclined to agree with White.

In two of the cases cited by White, *Orr v. Orr* (1979), 440 U.S. 268; and *Caliafano v. Webster* (1977), 430 U.S. 313, the Supreme Court held that : "To withstand scrutiny under the Equal protection Clause, classifications by gender must serve important governmental objectives and must be substantially related to achievement of those objective." *Orr v. Orr*, *supra*, at para. 2a of syllabus.

Although the Supreme Court has stopped short of declaring that women are a suspect classification for Equal Protection purposes, the Court noted in *Caliafano v. Webster*, *supra*, that women have been traditionally discriminated against in economic terms. In upholding a female-preferential provision in connection with the calculation of Social Security benefits, the Court held that that provision satisfied the necessary "important governmental objective" as follows:

"Reduction of the disparity in economic conditions between men and women caused by the long history of discrimination against women has been recognized as such an important governmental objective."

STRS cites *Personnel Administrator of Massachusetts v. Feeney* (1979), 442 U.S. 256 for the proposition that where a statutory provision is not *per se* gender-discriminatory but merely has a disproportionate adverse impact upon one gender, it can only be struck down as unconstitutional upon a showing that the legislature had a gender-discriminatory purpose in enacting the provision. In that case, provisions of Massachusetts state law giving substantial preferences to military veterans for state employment and promotion purposes were upheld even though the female plaintiff had shown a strong adverse impact upon women resulting from those preferences. As in this case, the challenged statute did not directly discriminate against women, since some women were veterans, just as some women are the older spouse.

At first glance, *Personnel Administrator of Massachusetts v. Feeney*, *supra*, does appear to support STRS's argument. However, we are inclined to distinguish *Feeney* based upon the validity and importance that the Supreme Court found in the non-gender-discriminatory purpose involved in that statute. We find support for this view in the following sentence in *Feeney*, at 442 U.S. 277-8:

"The basic distinction between veterans and non veterans having been found not gender based and the goals of the preference having been found worthy, ch. 31 [the statute] must be analyzed as is any other neutral law that casts a greater burden on women as a group than upon men as a group."

The above-quoted sentence suggests to us that the Supreme Court has not abandoned its previous holdings that classifications by gender must serve important governmental objectives and must be substantially related to the achievement of those objectives, nor has it determined that that requirement does not apply in cases involving as indirect, but substantial, discriminatory impact upon one sex. In our view, the Supreme Court simply found that a preference given to veterans for state employment purposes did, in fact, serve an important governmental objective by promoting the willingness of able-bodied men and women to serve their country in war-time[1], secure in the knowledge that their contributions will not be forgotten.

By contrast, in the case before us there has not been any showing of an important governmental interest to be furthered by the preference given to an older parent of a deceased STRS contributor. In its brief, STRS argues that "the structure of society is such that the older parent of a member is probably the parent who has increased health problems and costs and is the parent most in need of financial support." STRS presented no evidence to support this argument, and it could as well be argued that the younger of two elderly parents, particularly if she is a woman, has a longer life expectancy, and there-

fore a longer period of time during which she will be in need of money to pay medical expenses.

STRS also quarrels with White's statistical proof, contending that the evidence upon which White relies fails to take into consideration the greater likelihood that the woman will be the sole surviving parent of a deceased teacher. This argument is very like an argument that was rejected in *Dothard v. Rawlinson* (1977), 433 U.S. 321, 53 L.Ed 2d. 786, 97 S. Ct. 2720.

In *Dothard v. Rawlinson, supra,* an Alabama statute imposing certain minimum height and weight requirements for persons employed as prison guards was challenged by a female plaintiff. The plaintiff presented evidence tending to show that only two to three per cent of males were excluded by the requirements, but that forty-one per cent of females were excluded. The defendant attacked the statistical validity of the plaintiff's proof, upon the basis that her proof was national in scope, and was not limited to the men and women of Alabama. Furthermore, in an argument reminiscent of McGill's argument in this case, the defendant contended that the statistical evidence offered by the plaintiff was deficient in that it was not based on an analysis of the characteristics of those persons who had actually applied for the position of prison guard. The Supreme Court, noting that the plaintiff had presented *some* evidence of a disproportionate impact upon women, and that the defendant had presented *no* evidence either to rebut that evidence or to show that there was some gender-neutral justification for the height and weight requirements, held as follows:

"There is no requirement, however, that a statistical showing of disproportionate impact must always be based on analysis of the characteristics of actual applicants * * * . A potential applicant could easily determine her height and weight and conclude that to make an application would be futile. Moreover, reliance on general population demographic data was not misplaced where there was no reason to suppose that physical height and weight characteristics of Alabama men and women differ markedly from those of the national population.

"* * *

"The plaintiffs in a case such as this are not required to exhaust every possible source of evidence, if the evidence actually presented on its fact conspicuously demonstrates a job requirement's grossly discriminatory impact. If the employer discerns fallacies or deficiencies in the data offered by the plaintiff, he is free to adduce countervailing evidence of his own."

97 S. Ct. 2727-28.

In the case before us, as in *Dothard v. Rawlinson, supra,* a plaintiff has presented some evidence in support of her contention that a provision that is facially gender-neutral actually imposes a disproportionate impact upon women, and the defendant has presented no evidence to rebut that evidence or to justify the provision on some basis that is not gender-based. In this case, unlike in *Dothard v. Rawlinson, supra,* there is even more reason to give the plaintiff the benefit of the doubt because a summary judgment was rendered in favor of defendant STRS. All reasonable inferences from the evidentiary material presented to the trial court in connection with the summary judgment must be resolved against the movant. Civ. R. 56(C).

STRS cites *Roth v. Public Employees Retirement System* (1975), 44 O. App. 2d 155 for the proposition "that all laws do not have to apply to all citizens in precisely the same manner." Significantly, however, the holding in *Roth* was that the statute in question in that case violated the Equal Protection Clauses of both the Fourteenth Amendment of the United States Constitution and Article I, Section 2 of the Ohio Constitution by treating former municipal employees who had not been policemen or firemen differently from those who had been policemen or firemen. There was no apparent gender discrimination involved in that case, nor did the case involve a suspect classification. Nevertheless, then Judge Holmes, now a justice of the Ohio Supreme Court, wrote an opinion holding that there had been no showing of the reasonableness of a classification and distinction which "on its face seems to clearly violate the appellant's rights to equal protection." 44 O. App. 2d 160.

In the case before us, we find, as Judge Holmes did in *Roth, supra,* that the normal presumption in favor of the constitutionality and validity of any legislative act has been overcome by proof submitted by the plaintiff, viewed in a light most favorable to her, tending to show that the statutory preference given to the older parent has an adverse impact upon women that is disproportionate to any important governmental purpose likely to be served by the provision.

We conclude that the summary judgment in favor of STRS was improvidently granted. However, we do not conclude that the trial court should have granted White's motion for summary judgment. In connection with White's motion for summary judgment, it was incumbent upon her to show there was no genuine issue of material fact and that she was entitled to judgment as a

matter of law. Furthermore, the evidence was required to be viewed in a light most favorable to STRS and McGill, and all reasonable inferences had to be drawn in their favor. When the evidence is so viewed, we conclude that White failed to establish that there was no genuine issue of material fact and that she was entitled to judgment as a matter of law. Accordingly, we conclude that the trial court properly denied White's motion for summary judgment.

Upon remand, the issue will be whether the adverse impact upon women resulting from the statutory preference in favor of the older parent is disproportionate to any important governmental purpose to be served by that preference.

White's Second Assignment of Error is sustained. Her Third Assignment of Error is overruled.

### IV

White's Second Assignment of Error having been sustained, the summary judgment rendered against her will be reversed, and this cause will be remanded for further proceedings.

*Judgment reversed and cause remanded.*

WILSON and BROGAN, JJ., Concur.

----

[1] The veterans' preference statute in *Personnel Administrator of Massachusetts v. Feeney, supra* defined "veteran," for purposes of the statute, as someone whose service in the armed forces of the United States included any period of time during which this country was at war.