COSBY, Appellant,

v.

COSBY et al., Appellees

[Cite as *Cosby v. Cosby* (2001), 141 Ohio App.3d 320.]

Court of Appeals of Ohio,
Twelfth District, Butler County.

No. CA99–11–192.

Decided Feb. 20, 2001.

*Fred Miller,* for appellant.

*Michael Gmoser,* for appellees.

GRADY, Judge.

This is an appeal from a judgment of the court of common pleas rendered in favor of defendant, Bonnie Cosby, on the claim of plaintiff, Faye Cosby, alleging unjust enrichment.

The subject of Faye Cosby's claim for relief is a surviving spouse's death benefit generated by a State Teacher's Retirement System ("STRS") account accumulated by her former husband, Carel Cosby. Carel Cosby's contributions to the STRS account commenced in 1952, the year Carel Cosby and Faye Cosby were married. They were divorced in 1989. Ten days later, Carel Cosby married defendant, Bonnie Cosby. Carel Cosby's STRS contributions continued until his death in 1997.

Carel Cosby had planned to retire when he died unexpectedly. Because he had designated Bonnie Cosby his surviving spouse, the proceeds of his STRS account are payable to Bonnie Cosby in the form of a "death benefit" per R.C. 3307.48. Since Carel Cosby's death, Bonnie Cosby has received one hundred percent of the death benefit STRS has paid out.

Faye Cosby claims that she is entitled to forty percent of the death benefit that Bonnie Cosby receives. Faye Cosby asked the trial court to find that Bonnie Cosby is unjustly enriched by the amount of the benefit due Faye Cosby, and to impose a constructive trust in her favor requiring Bonnie Cosby to remit to Faye Cosby her share of the death benefit Bonnie Cosby receives.

Faye Cosby's claim for unjust enrichment is founded on a provision in the 1989 judgment and decree of divorce terminating her marriage to Carel Cosby. That provision states:

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the plaintiff, Carel A. Cosby, Jr., will pay to the defendant, Faye M. Cosby, the sum of Three Hundred Fifty ($350.00) Dollars a month alimony, commencing, October 1, 1989; said alimony will terminate upon the death of the plaintiff or the defendant; upon the re-marriage of the defendant; or upon the cohabitation with a non-related male by the defendant; or until such time as the plaintiff retires. Upon the retirement of the plaintiff, the plaintiff will receive Sixty (60%) Percent of his State Teacher's Retirement Fund; and the defendant will receive Forty (40%) Percent of said retirement fund. AND IT IS FURTHER ORDERED that the plaintiff will guarantee that the defendant receive at least One Thousand ($1,000.00) Dollars per month from said retirement."

The trial court rejected Faye Cosby's claim, reasoning that it was the intention of the parties that Faye Cosby's right to forty percent of Carel Cosby's STRS account was contingent on his retirement. Therefore, and because Carel Cosby

had not retired when he died, the court concluded that Faye Cosby has no right to be paid forty percent of the death benefit that Bonnie Cosby receives. Further, because Bonnie Cosby engaged in no fraud or wrongdoing to obtain those funds, which are paid to her by operation of law, the court held that the constructive trust remedy cannot apply. Accordingly, the court entered a judgment for defendant, Bonnie Cosby.

Plaintiff, Faye Cosby, filed a timely notice of appeal. She presents a single assignment of error, which states:

"The trial court erred to the prejudice of plaintiff-appellant when it held that she had not established her right to have a constructive trust established for her benefit."

The principles of the constructive trust doctrine were discussed in *Ferguson v. Owens* (1984), 9 Ohio St.3d 223, 9 OBR 565, 459 N.E.2d 1293, wherein the court stated:

"A constructive trust is, in the main, an appropriate remedy against unjust enrichment. This type of trust is usually invoked when property has been acquired by fraud. However, a constructive trust may also be imposed where it is against the principles of equity that the property be retained by a certain person even though the property was acquired without fraud. See 53 Ohio Jurisprudence 2d (1962) 578–[459 N.E.2d 1296] 579, Trusts, Section 88; V Scott on Trusts (3 Ed.1967) 3412, Section 462.

"In applying the theories of constructive trusts, courts also apply the well known equitable maxim, 'equity regards done that which ought to be done.' " *Id.* at 226, 9 OBR at 567, 459 N.E.2d at 1296.

Faye Cosby asked the court to grant her the relief available through a constructive trust. The claim she made, proof of which is a necessary predicate to the relief she sought, was for unjust enrichment.

"The phrase 'unjust enrichment' is used in law to characterize the result or effect of a failure to make restitution of, or for, property or benefits received under such circumstances as to give rise to a legal or equitable obligation to account therefor. It is a general principle, underlying various legal doctrines and remedies, that one person should not be permitted unjustly to enrich himself at the expense of another, but should be required to make restitution of or for property or benefits received, retained, or appropriated, where it is just and equitable that such restitution be made, and where such action involves no violation or frustration of law or opposition to public policy, either directly or indirectly." 66 American Jurisprudence 2d (1973) 935, Restitution and Implied Contracts, Section 3.

The trial court rejected Faye Cosby's unjust enrichment claim, reasoning that the separation agreement which the divorce decree incorporated was a contract, the express terms of which conferred no right on Faye Cosby of the kind she asked the court to enforce. The court erred in so holding, for three reasons.

■■ First, the terms of the separation agreement are not dispositive of Faye Cosby's rights. The agreement lost its contractual nature when it was incorporated into the divorce decree. *Bugay v. Bugay* (1977), 53 Ohio App.2d 285, 7 O.O.3d 336, 373 N.E.2d 1263. Thereafter, the agreement is superseded by the decree, and the terms of the agreement are imposed by the decree rather than by the contract. *Greiner v. Greiner* (1979), 61 Ohio App.2d 88, 15 O.O.3d 95, 399 N.E.2d 571. Therefore, the particular intentions of the parties when they entered the agreement are not dispositive of their rights. Instead, the decree is dispositive, and the decree should be construed consistent with the law governing division of marital property, which is presumably the law the domestic relations court applied when it entered the decree.

■ Second, Bonnie Cosby's right to Carel Cosby's STRS account is wholly derivative of Carel Cosby's rights in the STRS account, which were limited by the marital property division that the domestic relations court ordered in its decree of divorce terminating his marriage to Faye Cosby. Carel Cosby could not, by designating Bonnie Cosby his surviving spouse, thereafter give Bonnie Cosby any of that part of his STRS retirement account which the domestic relations court had awarded Faye Cosby as her share of their marital property.

Third, Faye Cosby's claim of unjust enrichment is not determined by her agreement with Carel Cosby. The claim is made against Bonnie Cosby, on a theory that she receives Carel Cosby's death benefit subject to an implied promise to give Faye Cosby the share of that benefit to which Faye Cosby is entitled pursuant to the property division which the domestic relations court ordered. The implied promise Faye Cosby asked the court to find is a promise created as an equitable remedy, not an express promise made by one of the parties to the other. *Klebe v. United States* (1923), 263 U.S. 188, 44 S.Ct. 58, 68 L.Ed. 244.

When Carel Cosby and Faye Cosby were divorced in 1989, both division of marital property and orders for spousal support were governed by R.C. 3109.18.[1] Each was subject to the full equitable powers and jurisdiction conferred on the domestic relations courts by R.C. 3105.011. With respect to property division, an equal division of marital property was the preferred starting point from which to

---

1. Those matters were separated in 1991. Property division is now governed by R.C. 3109.171.

reach an equitable result. *Cherry v. Cherry* (1981), 66 Ohio St.2d 348, 20 O.O.3d 318, 421 N.E.2d 1293.

A vested pension plan accumulated during marriage is a marital asset that must be considered in arriving at an equitable division of marital property. *Holcomb v. Holcomb* (1989), 44 Ohio St.3d 128, 132, 541 N.E.2d 597, 600–601. The version of R.C. 3105.18 in effect when Carel Cosby and Faye Cosby were divorced required the court to consider the retirement benefits of the parties when dividing marital assets. A failure to do that would have rendered the ensuing decree of divorce incorrect as a matter of law. *Bisker v. Bisker* (1994), 69 Ohio St.3d 608, 635 N.E.2d 308.

The domestic relations court considered the retirement benefits of the parties when it entered the decree of divorce terminating the marriage of Carel Cosby and Faye Cosby. Incorporating the terms of their separation agreement, the court awarded Faye Cosby a forty-percent share of Carel Cosby's retirement account. It awarded Carel Cosby none of Faye Cosby's smaller retirement account, reducing her share of his from one half to forty percent in consequence.

The domestic relations court ordered a division of the benefits payable from Carel Cosby's retirement account *in futuro*, payment to commence when he retired. However, and consistent with the presumption that the court followed the law, the court allocated the parties' rights in their respective retirement accounts *in praesenti*, when it entered its decree. Unlike the spousal support that it also ordered, those rights were not made contingent on Carel Cosby's retirement. Indeed, an award of marital property rights cannot be made subject to a contingency. *Zimmie v. Zimmie* (1984), 11 Ohio St.3d 94, 11 OBR 396, 464 N.E.2d 142.

The form of award that the court made was dictated by the requirements of R.C. 3307.21. That section exempts an STRS pension from execution or attachment by court order. As a result, the domestic relations court could not order the fund itself divided. However, the court could divide the rights of the parties in the fund, requiring Carel Cosby to share the proceeds of his retirement account with Faye Cosby in the proportion the court had ordered when those proceeds were received. See *Johnson v. Johnson* (1993), 85 Ohio App.3d 161, 619 N.E.2d 458. That is what the domestic relations court apparently expected Carel Cosby to do. The further requirement that Carel Cosby "guarantee that (Faye Cosby) receive at least One Thousand ($1,000.00) Dollars per month from said Retirement" is in furtherance of the obligation the court imposed on him.

R.C. 3307.21 was amended in 2000 by Am.Sub.H.B. No. 535. The amendment, which becomes effective on January 1, 2002, and which is codified as R.C. 3307.41, permits division of public employee retirement accounts by orders entered

pursuant to R.C. 3105.171, the section that requires an equitable division of marital property. Had that option existed in 1989, the domestic relations court could have directly divided the rights of Faye and Carel Cosby in his STRS account, avoiding these problems.

The domestic relations court may yet be able to order a direct division of Carel Cosby's death benefit after R.C. 3307.41 becomes effective. Such an order, similar to a qualified domestic relations order ("QDRO") applicable to a private pension plan, is merely relief in aid of a property division that the court previously has ordered. *Tarbert v. Tarbert* (Sept. 27, 1996), Clark App. No. 96–CA–0036, unreported, 1996 WL 555039. Therefore, the court does not "lose jurisdiction" to order such relief when it enters a final decree of divorce and may thereafter order a QDRO or other similar relief so long as the order is consistent with the court's property division order. *Id.*

R.C. 3307.41 permits any division of an STRS account ordered pursuant to R.C. 3105.171. That might include a direct division of Carel Cosby's death benefit. That would be a preferred course of action here, because it would operate to continue payment of Faye Cosby's portion of the death benefit should Bonnie Cosby predecease her, which the constructive trust remedy cannot accomplish. In that event, the trial court in this action might vacate any order it enters in favor of Faye Cosby pursuant to Civ.R. 60(B)(4).

The testimony offered at the trial of this matter confirmed that when Carel Cosby and Faye Cosby were divorced the parties anticipated that Carel Cosby would retire. They did not take account of the prospect that he might die before he retired. That omission is obviously an oversight, not the result of any agreement based on a belief that he would necessarily live to retire. Conversion of his retirement account into a death benefit occasioned by his unanticipated death prior to retirement cannot change its identity for purposes of the prior divorce decree. Nor can it defeat the division of the respective rights of the parties in the retirement account asset that the court awarded in the decree.

There is no evidence that Bonnie Cosby acquired her right to Carel Cosby's death benefit through fraud or other misconduct. However, the grounds for a claim of unjust enrichment are not that narrow. Unjust enrichment also results from a failure to make restitution where it is equitable to do so. *Lauriedale Assoc. Ltd. v. Wilson* (1992), 7 Cal.App.4th 1439, 9 Cal.Rptr.2d 774. That may arise when a person has passively received a benefit which it would be unconscionable for him to retain. *In re Brereton's Estate* (1957), 388 Pa. 206, 130 A.2d 453.

Bonnie Cosby acquired her rights to Carel Cosby's entire death benefit as his surviving spouse pursuant to law and his nomination of her. That

nomination operates to defeat the right to a forty-percent share of the fund that the domestic relations court had awarded Faye Cosby in 1989. Carel Cosby could not, by designating Bonnie Cosby his survivor for death benefit purposes, give Bonnie Cosby property which the domestic relations court had awarded Faye Cosby. It is unconscionable for Bonnie Cosby to retain the entire death benefit she receives, thereby defeating Faye Cosby's right to the share of marital property the domestic relations court awarded her.

On this record, we conclude that Bonnie Cosby is and has been unjustly enriched by retaining the share of Carel Cosby's death benefit to which Faye Cosby is entitled by the decree of divorce terminating her marriage to Carel Cosby. Equity supports a finding of an implied promise on the part of Bonnie Cosby to remit Faye Cosby's share to her. The trial court abused its discretion when it rejected Faye Cosby's claim for relief and failed to order the relief she requested. The assignment of error is, therefore, sustained.

The judgment from which this appeal was taken is reversed and vacated. Per App.R. 27, the cause will be returned to the trial court on our mandate to enter a judgment for plaintiff-appellant, Faye Cosby, on her claim for relief, and to impose a constructive trust in her favor requiring defendant-appellee, Bonnie Cosby, to pay Faye Cosby forty percent of the death benefits that Bonnie Cosby has received and will receive from the STRS account of Carel Cosby, beginning from the date the complaint in this action was filed, in an amount no less than $1,000 per month.

*Judgment accordingly.*

KERNS, J., concurs separately.

POWELL, P.J., dissents.

KERNS, Judge, concurring separately.

When Carel and Faye Cosby were in divorce proceedings, their marital assets included a substantial monetary interest in the State Teachers Retirement Fund, which accumulation was a product of the joint efforts of both parties during thirty-seven years of marriage.

Unfortunately, Mr. Cosby died before his pension rights were exercised, but this fact did not extinguish his obligation to pay Faye Cosby, as intended by both parties, because her rights emanated from the division of assets in the divorce decree.

At that time, and pursuant to a formula that reflected thirty-seven years of participation in the system, such asset was payable as either a retirement or

death benefit, but payment was delayed in the divorce decree pending a sixty-forty percentage division of this marital asset at some time in the future.

Nevertheless, the amount due each of the parties from the retirement fund was fixed and certain, and the division of such marital asset was complete upon the filing of the divorce decree. Thereafter, the amount awarded to Faye Cosby by the court was not subject to divestiture by the remarriage of Carel Cosby and/or by the retroactive application of the statutes that do provide some benefits to Bonnie Cosby over and above the benefits already provided to Faye Cosby in the divorce decree.

In this case, the appellee's complete reliance upon the death benefit statutes is unwarranted because all benefits, of whatever name or nature, payable by the Teacher's Retirement Fund are traceable, in substantial part, to the marital contributions and sacrifices of both Carel and Faye Cosby. And, in this regard, the imposition of a constructive trust appears to be an appropriate means of overcoming any impediments to a fair distribution of benefits to Faye Cosby as ordered in the divorce decree. Moreover, such a vehicle would carry into effect the obvious understanding and intentions of all parties involved in the divorce action.

POWELL, Presiding Judge, dissenting.

I must respectfully dissent because I disagree with the majority's conclusion that it is "unconscionable" to permit Bonnie Cosby to retain Carel Cosby's STRS death benefit. The majority reaches it conclusion by reasoning that Bonnie Cosby's receipt of the STRS death benefits defeats Faye Cosby's right to the division of Carel Cosby's retirement account that the trial court ordered in the original divorce decree. I believe that a constructive trust in this case is wholly inappropriate because *no party* has received Carel Cosby's pension benefits since those benefits, never matured, and a death benefit is not equivalent to pension retirement benefits.

Pension benefits mature only when the pension plan provides that distribution and payments are currently due and payable to the employee. *Erb v. Erb* (1996), 75 Ohio St.3d 18, 20, 661 N.E.2d 175, 177–178. STRS pensions benefits mature only upon formal retirement. R.C. 3307.711; see, also, *Patsey v. Patsey* (Dec. 16, 1998), Columbiana App. No. 96CO52, unreported, 1998 WL 896455; *Catron v. Catron* (Dec. 19, 1997), Trumbull App. No. No. 96–T–5609, unreported, 1997 WL 799507.

Ohio courts have recognized four alternative methods for equitably dividing unvested and unmatured pension funds within the context of an overall property division. The alternatives include (1) withdrawing the employee spouse's share of the funds from the pension plan and apportioning and distributing them at the

time of the divorce; (2) determining the present value of the pension fund, calculating the nonemployee spouse's proportionate share, and offsetting that amount with other marital assets or a lump sum payment; (3) determining the present value of the pension fund, calculating the nonemployee spouse's proportionate share, and offsetting that amount with installment payments from the employee spouse; and (4) determining the appropriate percentage or amount of future benefits in view of the circumstances and ordering that amount to be paid directly from the fund to the nonemployee spouse *if and when* the pension matures. See, *e.g., Ricketts v. Ricketts* (1996), 109 Ohio App.3d 746, 752, 673 N.E.2d 156, 160; *Smith v. Smith* (1993), 91 Ohio App.3d 248, 253, 632 N.E.2d 555, 558–559; *Sprankle v. Sprankle* (1993), 87 Ohio App.3d 129, 132, 621 N.E.2d 1310, 1311–1312. The first option is not available to divide public pensions such as an STRS pension plan because they are not covered by the Employee Retirement Income Security Act of 1974 and are not currently subject to division pursuant to a qualified domestic relations order.[2] *Sprankle v. Sprankle* (1993), 87 Ohio App.3d 129, 131, 621 N.E.2d 1310, 1311.

In this case, the trial court chose the fourth option and determined the appropriate percentage of Carel Cosby's future STRS pension benefits that each party would receive if and when the pension matured. This method of dividing an unmatured pension "divides the risk between the parties that the benefits will fail to vest or mature." *Hoyt v. Hoyt* (1990), 53 Ohio St.3d 177, 182, 559 N.E.2d 1292, 1298.

If the pension fails to mature, neither party will receive the benefits. See *id.* "Likewise, the nonemployed spouse bears the risk that the employed spouse will die and the expected benefits, before being vested [and] matured, will terminate." *Id.* Carel Cosby's STRS pension never matured because he never formally retired. Nobody has a vested, matured interest in Carel Cosby's STRS retirement pension. See R.C. 3307.42.[3]

When a member of the STRS dies before retirement, R.C. 3307.562[4] provides that his accumulated contributions shall be paid to his named beneficiary at the

---

**2.** The General Assembly recently passed Am.Sub.H.B. No. 535, which permits public retirement programs in Ohio, including STRS, to make payments to a participant's former spouse for the purpose of dividing marital property, pursuant to a court order. The amendments are effective January 1, 2002.

**3.** R.C. 3307.42 is former R.C. 3307.711, amended and recodified.

**4.** R.C. 3307.562 was formerly codified as R.C. 3307.48. R.C. 3307.48 was recently repealed, amended and recodified as R.C. 3307.562.

time of his death. R.C. 3307.562 provides for the automatic revocation of a member's former spouse as the designated beneficiary upon divorce, dissolution or legal separation:

"The member's marriage, divorce, marriage dissolution, legal separation, or withdrawal of account, or the birth of the member's child, or the member's adoption of a child, shall constitute an automatic revocation of the member's previous designation."

In the event of an automatic revocation R.C. 3307.562 provides that the following shall qualify as beneficiaries in their order of precedence: (1) the member's current surviving spouse, (2) children, (3) parents and (4) the member's estate. These provisions demonstrate a clear legislative recognition that STRS members would ordinarily revoke a prior designation of a beneficiary upon the occurrence of a divorce, dissolution, annulment, or the birth or adoption of a child. See *White v. McGill* (1990), 67 Ohio App.3d 1, 5, 585 N.E.2d 945, 947–948.

R.C. 1339.63 also provides that former spouses ordinarily do not have any rights in employer death benefit plans after a divorce, dissolution or annulment.

"Unless the designation of beneficiary or the judgment or decree granting the divorce, dissolution of marriage, or annulment *specifically provides otherwise,* * * * if a spouse designates the other spouse as a beneficiary * * * and if, after [the] designation, the spouse who made the designation * * * is divorced from the other spouse, obtains a dissolution of marriage, or has the marriage to the other spouse annulled, then the other spouse shall be deemed to have predeceased the spouse who made the designation * * *, and the designation of the other spouse as a beneficiary is revoked as a result of the divorce, dissolution of marriage, or annulment." (Emphasis added.) R.C. 1339.63(B)(1).

Under R.C. 1339.63(A)(2), employer death benefit plans include "any funded or unfunded plan or program, or any fund, that is established to provide the beneficiaries of an employee participating in the plan, program, or fund with benefits that may be payable upon the death of that employee."

Therefore, under both R.C. 3307.562 and 1339.63, a former spouse has no rights to the other spouse's STRS death benefit in the absence of an express redesignation of the former spouse as a beneficiary.

Carel Cosby's STRS pension never matured because he died before retirement. Faye Cosby's interest in Carel Cosby's STRS pension terminated with Carel Cosby's death. No one is collecting Carel Cosby's STRS retirement pension. Since Carel Cosby died before his retirement, his designated beneficiary was

entitled to receive an STRS death benefit. Carel Cosby could have designated anyone to receive the death benefit, not just Bonnie Cosby. By statute, even in the absence of being a designated beneficiary, Bonnie Cosby has a right in Carel Cosby's death benefit superior to that of Faye Cosby.

It is well established that once marital property is allocated, awards are final and the court does not have continuing jurisdiction to modify an award in the nature of a property settlement. *Wolfe v. Wolfe* (1976), 46 Ohio St.2d 399, 75 O.O.2d 474, 350 N.E.2d 413. Modification of property division awards is expressly prohibited by R.C. 3105.171(I). Under the guise of a constructive trust, the majority has ignored this established principle and has effectively modified the parties' property settlement to specifically nominate Faye Cosby as the beneficiary of Carel Cosby's STRS death benefit. Further, the majority's approach circumvents R.C. 3307.562 and 1339.63 by converting a death benefit into vested and matured retirement benefits. Contrary to the majority's assertion, permitting Bonnie Cosby to retain the death benefit paid to her by STRS does not defeat Faye's Cosby's rights to share in Carel Cosby's retirement benefits. Rather, the majority's decision defeats Bonnie Cosby's statutory rights to receive Carel Cosby's entire death benefit.

For the foregoing reasons, I cannot join the majority opinion and I respectfully dissent.

THOMAS J. GRADY, J., of the Second Appellate District, sitting by assignment.

JOSEPH D. KERNS, J., retired, of the Second Appellate District, sitting by assignment.