that Reisenfeld was not an intended third-party beneficiary of the BSI/Dick's contracts.

### III

Reisenfeld may seek payment from BSI under a quasi-contract theory. We therefore VACATE the district court's judgment and REMAND the case for consideration of damages. However, we AFFIRM the dismissal of Reisenfeld's third-party beneficiary claim.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0025P (6th Cir.)
File Name: 02a0025p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

REISENFELD & CO.,
     *Plaintiff-Appellant,*

*v.*

THE NETWORK GROUP, INC.;
BUILDERS SQUARE, INC.;
K MART CORP.,
     *Defendants-Appellees.*

No. 00-3883

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 97-02368—David S. Perelman, Magistrate Judge.

Argued: October 23, 2001

Decided and Filed: January 18, 2002

Before: BOGGS and GILMAN, Circuit Judges; and
QUIST, District Judge.

_____

*The Honorable Gordon J. Quist, United States District Judge for the Western District of Michigan, sitting by designation.

---

**COUNSEL**

---

**ARGUED:**    Richard S. Koblentz, KOBLENTZ & KOBLENTZ, Cleveland, Ohio, for Appellant.  Stephen M. Bales, ZIEGLER, METZGER & MILLER, Cleveland, Ohio, for Appellee.  **ON BRIEF:**  Richard S. Koblentz, Danielle M.F. Swisher, KOBLENTZ & KOBLENTZ, Cleveland, Ohio, for Appellant.    Stephen M. Bales, ZIEGLER, METZGER & MILLER, Cleveland, Ohio, Edward S. Hubbard, COATS, ROSE, YALE, RYMAN & LEE, Houston, Texas, for Appellee.

---

**OPINION**

---

BOGGS, Circuit Judge.  Reisenfeld & Company appeals a grant of summary judgment in favor of defendants Builders Square, Inc. and its parent company, K Mart Corporation (together "BSI"), in a breach of contract case brought under Ohio law.  Reisenfeld argues on appeal that the district court erred in holding that Reisenfeld could not sue BSI for payment of a broker's commission on either a quasi-contract or a third-party beneficiary theory.  Upon review, we agree with the trial court that Reisenfeld can not sue BSI on a third-party beneficiary theory; however, Reisenfeld can sue on a quasi-contract theory.  Accordingly, we affirm the trial court's decision with respect to Reisenfeld's third-party beneficiary claim but vacate and remand the decision with respect to the quasi-contract claim.

**I**

Beginning in 1989, BSI contracted with the Network Group ("Network"), a commercial real estate broker, to assist BSI in either selling or subleasing closed K Mart stores.  During the course of the relationship between BSI and Network, several

for the same proposition).  *See also* 17A AM. JUR. 2D *Contracts* § 442 (2001) (stating the general rule that "the intent which must exist is not a desire or purpose to confer a particular benefit upon the third person, but an intent that the promisor should assume a direct obligation to him").  It is, of course, obvious that the contract as a whole was not entered into "directly or primarily for the benefit" of Reisenfeld.

It is also clear that the specific provision in the contract mentioning Reisenfeld was not entered into for Reisenfeld's benefit.  Reisenfeld cites the provision of the BSI/Dick's contracts discussing brokerage commissions as evidence that Reisenfeld was an intended third-party beneficiary of the contracts.  The provision states:

> BSI shall pay a real estate commission in connection with this transaction to The Network Group, Inc. ("Network") pursuant to a separate written agreement between BSI and Network, a portion of which commission shall be paid by Network to Steve Wiesenberger of Reisenfeld & Company ("Reisenfeld") pursuant to a separate written agreement between Network and Reisenfeld.  No other real estate commissions are owed in connection with this transaction, and BSI and Dick's shall each indemnify and hold the other harmless from and against any and all liabilities arising from any such claims caused or incurred by it.

This provision is intended to limit the liability of each party in paying broker commissions to those that each party had contracted to pay through outside agreements and to allocate between BSI and Dick's the risk of any additional broker commissions for which the parties may be held liable.  It is clear that this provision was not entered into "directly or primarily for the benefit" of Reisenfeld.  *Cf. Laverick*, 540 N.E.2d at 310 (third party not an intended beneficiary of an indemnity clause that allocated risk between the parties to the contract).  Therefore, the district court did not err in holding

(Ohio Ct. App. Aug. 23, 1991). We must therefore vacate the district court's order and remand the case for a determination of value.

### Reisenfeld's Third-Party Beneficiary Claim

Reisenfeld argued before the district court that it was an intended third-party beneficiary of the BSI/Dick's contracts, and as such it is entitled to enforce its rights under the contracts as against BSI. In finding that, as a matter of law, Reisenfeld was not such a beneficiary, the district court properly held that under Ohio law, "[o]nly a party to a contract or an intended third-party beneficiary of a contract may bring an action on a contract." *Mergenthal v. Star Banc Corp.*, 701 N.E.2d 383, 385 (Ohio Ct. App. 1997). In other words, the parties to a contract must "intend that a third party benefit from the contract in order for that third party to have enforceable rights under the contract." *Laverick v. Children's Hosp. Med. Ctr. of Akron, Inc.*, 540 N.E.2d 305, 309 (Ohio Ct. App. 1988). The district court held that Reisenfeld was not an intended third-party beneficiary, because BSI entered into the subleasing contracts with Dick's to gain relief from the leases it held and expressed no intent to somehow thereby benefit Reisenfeld.

Reisenfeld does not disagree that BSI entered into the contract with Dick's because it had properties it needed to sublease; instead, Reisenfeld argues that, aside from BSI's main intention, BSI also intended that Reisenfeld be paid its commission. Implicit in this argument is the assertion that an ancillary intention is enough to confer enforceable rights on a third party. This argument, however, is foreclosed by Ohio law. As the Ohio Court of Appeals has stated, "[i]n order that a third person may enforce a promise made for his benefit, it must appear that the contract was made and entered into directly or primarily for the benefit of such third person." *Hines v. Amole*, 448 N.E.2d 473, 479 (Ohio Ct. App. 1982); *accord Wandling v. Matthews*, No. 00CA12, 2001 WL 812795, at *4 (Ohio Ct. App. May 31, 2001) (quoting *Hines*

such properties in the Toledo, Ohio area were put on the market for subleasing. In April 1994, BSI and Network entered into a "commercial listing agreement" under which Network agreed to act as broker for a number of BSI properties, including the Ohio properties at issue here.

In June 1994, Network entered into a commission agreement with Reisenfeld, an Ohio licensed real estate broker that represented Dick's Clothing & Sporting Goods ("Dick's"), which eventually subleased two stores in Ohio from BSI. The commission agreement between Network and Reisenfeld stated that if a deal was concluded between Dick's and BSI, Network would pay Reisenfeld a commission of $1 per square foot.

In November 1994, Dick's and BSI executed assignment and assumption agreements for the Ohio properties. Pursuant to the agreements, Dick's subleased (and presumably continues to sublease) the Ohio properties from BSI. In the agreements, BSI stated that it would pay a commission to Network and that Network would pay a portion of that commission to Reisenfeld "pursuant to a separate written agreement between Network and Reisenfeld." There was no agreement between BSI and Reisenfeld.

Throughout this time, Network's sole shareholder, Mark Aronds, was defrauding BSI in various ways. Though it appears that Aronds did not directly take money from BSI, he defrauded the company by taking commissions from both sides in some of the subleases and accepting below-market subleases on BSI's behalf. Aronds was convicted of several criminal charges stemming from his actions. As a result, the district court ordered Network to disgorge any commissions received from BSI and relieved BSI of the duty to pay any additional commissions owed to Network.

In August 1997, Reisenfeld sued in Ohio state court, alleging non-payment of $160,320 in commissions due from the Dick's/BSI sublease. In addition to suing Network as the

party from whom the commission was immediately due, Reisenfeld also sued BSI, alleging that it was jointly and severally liable along with Network for the commission. The case was removed to federal district court based on diversity of citizenship. The district court granted summary judgment to Reisenfeld against Network and summary judgment to BSI against Reisenfeld. Unable to collect from Network, Reisenfeld filed a timely appeal to this court, arguing that the district court erred in granting summary judgment to BSI.

## II

### *Reisenfeld's Quasi-Contract Claim*

Reisenfeld claims on appeal that the district court erred in holding that Reisenfeld could not seek payment from BSI on a theory of quasi-contract. A contract implied-in-law, or "quasi-contract" is not a true contract, but instead a liability imposed by courts in order to prevent unjust enrichment. *See Vargo v. Clark*, 716 N.E.2d 238, 242 (Ohio Ct. App. 1998). As a major treatise explains, "[a] quasi-contractual obligation is one that is created by the law for reasons of justice, without any expression of assent and sometimes even against a clear expression of dissent." 1 ARTHUR LINTON CORBIN, CORBIN ON CONTRACTS § 1.20 (1993).

Under Ohio law, there are three elements for a quasi-contract claim. There must be: (1) a benefit conferred by the plaintiff upon the defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment. *See Telephone Mgmt. Corp. v. Goodyear Tire & Rubber Co.*, 32 F. Supp. 2d. 960, 972 (N.D. Ohio 1998); *Hambleton v. R.G. Barry Corp.*, 465 N.E.2d 1298, 1302 (Ohio 1984) (per curiam).

There is no disagreement as to the first two requirements. It is clear that Reisenfeld's work as broker benefited BSI and that BSI was aware of the work Reisenfeld was doing. The disagreement rests on the third requirement – whether it

TRUSTS § 1 reporter's note (1937) (explaining that in *Boston Ice Co.*, it was important that the "defendant did not wish to deal with the plaintiff"); Peter Linzer, *The Decline of Assent: At-Will Employment as a Case Study of the Breakdown of Private Law Theory*, 20 Ga. L. Rev. 323, 378 n.263 (1986) (same). Further, as noted above, Ohio courts give a fairly broad scope to quasi-contract, thereby rejecting the formalities of classical contract doctrine. *See Cosby*, 750 N.E.2d at 1213.

Of course, liability under quasi-contract does not necessarily imply liability for the amount of money promised Reisenfeld under its contract with Network. Instead, the proper measure of liability is the reasonable value of the services Reisenfeld provided to BSI.[1] *See Novomont Corp. v. Lincoln Elec. Co.*, No. 78389, 2001 WL 1352641, at *6 (Ohio Ct. App. Nov. 1, 2001); *Plageman v. Benchmark Technologies Corp.*, No. L-90-283, 1991 WL 163495, at *4

---

[1]Though some commentators describe "quasi-contract" and "unjust enrichment" as two completely separate doctrines, *see* 66 AM. JUR. 2D *Restitution and Implied Contracts* §§ 37, 40 (2001), Ohio courts use the phrase "unjust enrichment" to describe the third requirement for "quasi-contract," the one at issue in this case. *See Hambleton*, 465 N.E.2d at 1302. This is a distinction without a difference until it comes to measuring damages.

Commentators that describe the terms as separate doctrines set out a different measure of damages for each. *See* 66 AM. JUR. 2D *Restitution and Implied Contracts* § 37 (2001) (explaining that in a quasi-contract case, damages are measured by the reasonable value of the work provided by the plaintiff, whereas in an unjust enrichment case, damages are measured by the benefit realized by the defendant). Ohio courts set damages for quasi-contract cases at the reasonable value of the goods or services provided. *See, e.g., Ross-Co Redi Mix Co.*, 1996 WL 54174, at *2. Commentators and the Ohio Courts often term this measure of recovery *quantum meruit*. *See, e.g.,* 66 AM. JUR. 2D *Restitution and Implied Contracts* § 37 (2001); *Aultman Hosp. Ass'n v. Cmty. Mut. Ins. Co.*, 544 N.E.2d 920, 924 (Ohio 1989) ("*Quantum meruit* is generally awarded when one party confers some benefit upon another without receiving just compensation for the reasonable value of services rendered."). This phrase means, literally, "as much as he has deserved." BLACK'S LAW DICTIONARY 1255 (7th ed. 1999).

York law) (stating same general rule for disputes between contractors and second-tier subcontractors, but finding liability in quasi-contract because of misrepresentation made by the contractor to the second-tier subcontractor).

However, cases citing the general rule seem to do so in the context of a property owner who has already paid the contractor pursuant to their contract. *See Sundance Mechanical & Util. Corp. v. Atlas*, 880 P.2d 861, 866 (N.M. 1994) ("a subcontractor cannot recover against the landowner in quasi-contract when that landowner has paid 'a very substantial part' of the contract amount to the general contractor"). The cases and treatises do not often analyze the situation where the property owner has not paid the party with whom he has contracted. However, that is the case here; BSI has not paid Network on this contract, and the losses suffered by BSI at Network's hands were "soft" losses of additional profits Network might have made, rather than quantifiable losses (due, for example, to theft) that might be held to constitute payment. Therefore, though not controlling of this matter, the Ohio contractor/subcontractor cases involving property owners who have not paid the contractors provide persuasive support for the proposition that Reisenfeld may hold BSI accountable on a theory of quasi-contract for the benefits it provided to BSI, and for which it was not compensated by Network.

Lastly, since BSI raised the issue, it should be noted that the old law school doctrine of not holding a benefited party liable to pay a provider with whom they had not contracted is not apropos in the present case. For example, the classic casebook case sometimes cited for this proposition, *see Boston Ice Co. v. Potter*, 123 Mass. 28 (1877), is distinguishable and would not be good law in Ohio. In *Boston Ice Co.*, the recipient had affirmatively chosen not to do business with the providing party, and it was on this basis that the recipient was held not liable to pay for the services it received. *Id.* at 29-30. *See also* RESTATEMENT OF RESTITUTION: QUASI CONTRACTS AND CONSTRUCTIVE

would be unjust for BSI to retain the benefit it received without paying Reisenfeld for it.

Defining a given situation as either just or unjust is subjective and not necessarily open to a clear and decisive answer; as one court explained, "[t]he notion of what is or is not 'unjust' is an inherently malleable and unpredictable standard." *DCB Constr. Co. v. Central City Dev. Co.*, 965 P.2d 115, 120 (Colo. 1998).

The district court in the present case adopted the reasoning of a Washington state case, which held that a benefited third party is not liable under a theory of unjust enrichment in the absence of acquiescence to the contract, or misdeeds on the part of the third party concerning the performance of the complaining party. *See Farwest Steel Corp. v. Mainline Metal Works, Inc.*, 741 P.2d 58 (Wash. Ct. App. 1987). Accordingly, the district court held that Reisenfeld could not sue BSI for payment under an unjust enrichment theory where Reisenfeld had contracted with Network for payment and BSI had not acted improperly.

Some courts have held, as the district court in this case did, that for the circumstances to be unjust such that the benefited third party should be made to pay the providing party, the benefited party must have acted improperly in some way. For example, in a case cited by the district court, the Colorado Supreme Court held that where a contractor was hired and not paid by a lessee, the contractor had to show that the landlord engaged in some form of improper, deceitful, or misleading conduct before he could sue the landlord for payment under an unjust enrichment theory. *See DCB Constr. Co.,* 965 P.2d at 122.

However, under Ohio law, there is no such requirement. As the Ohio Court of Appeals recently noted, "the grounds for a claim of unjust enrichment are not that narrow. Unjust enrichment also results from a failure to make restitution where it is equitable to do so. That may arise when a person

has passively received a benefit which it would be unconscionable for him to retain." *Cosby v. Cosby*, 750 N.E.2d 1207, 1213 (Ohio Ct. App. 2001) (citations omitted). *Cf.* RESTATEMENT OF RESTITUTION: QUASI CONTRACTS AND CONSTRUCTIVE TRUSTS § 1 (1937) ("A person who has been unjustly enriched at the expense of another is required to make restitution to the other.").

Therefore, Reisenfeld is not necessarily precluded from seeking payment from BSI under a quasi-contract theory merely because there is no allegation that BSI acted improperly toward Reisenfeld. However, no case law directly addresses the situation we are faced with here – where a sub-broker is seeking payment directly from a property owner when the property owner has not paid the broker and the broker has not paid the sub-broker. Given that the particular fact pattern of a property owner, broker and sub-broker has not been widely dealt with, it is instructive to look at analogous situations on which there is case law. One such situation is that of a subcontractor suing a property owner for payment not received from a contractor. This is similar to the present case in that the benefited third party has contracted with one party for the provision of a service and that party has in turn contracted with another party to provide all or part of that service.

Unreported Ohio Court of Appeals cases support the proposition that, in the contractor/subcontractor context, when the subcontractor is not paid by the contractor *and the owner has not paid the contractor* for the aspect of the job at issue, the subcontractor can look to the owner for payment under a theory of unjust enrichment. *Ross-Co Redi Mix Co. v. Steveco, Inc.*, No. 95CA3, 1996 WL 54174, at *3 (Ohio Ct. App. Feb. 6, 1996); *see also Brower Prods. Inc. v. Musilli*, Nos. 98CA58; 98CA59, 1999 WL 317122, at *2 (Ohio Ct. App. May 21, 1999); *Steel Quest, Inc. v. City Mark Constr. Servs.*, NO. C-960994, 1997 WL 674614, at *2 (Ohio Ct. App. Oct. 31, 1997) (citing *Ross-Co*). Further, another Ohio case, in dicta, supports the proposition that non-payment by

the owner would make payment on an unjust enrichment theory appropriate. In discussing what it called "the best-case scenario for recognizing the unjust enrichment claim of a subcontractor" against a property owner, the Ohio Court of Appeals wrote:

> That event occurs when a property owner has not paid his general contractor the full amount originally bargained for under the contract and either the improvements are complete or enough funds remain under the contract to compensate the subcontractor and to finish construction. In this circumstance, the owner enjoys, at the subcontractor's expense, an unfair windfall from whatever caused the general contractor to accept less than the agreed amount and breach its obligation to the subcontractor. The owner receives the benefits of the subcontractor's performance, but avoids paying anyone for it. In this situation, a finding of unjust enrichment is warranted.

*Booher Carpet Sales, Inc. v. Erickson*, No. 98-CA-0007, 1998 WL 677159, at *7 (Ohio Ct. App. Oct. 2, 1998).

It is true that the general rule in contractor/subcontractor cases is that "an action for unjust enrichment does not lie against an owner by a subcontractor in the absence of evidence that the owner misled the subcontractor to the subcontractor's detriment, that the owner in some way induced a change in the subcontractor's position to the subcontractor's detriment, or some evidence of fraud by the owner against the subcontractor." 66 AM. JUR. 2D *Restitution and Implied Contracts* § 33 (2001); *Accord Haz-Mat Response, Inc. v. Certified Waste Servs., Ltd.*, 910 P.2d 839, 847 (Kan. 1996) (property owner not liable to pay subcontractor who was not paid by the owner's contractor when there was no allegation of impropriety by the property owner with respect to the subcontractor); *U.S. East Telecommunications, Inc. v. U.S. West Communications Servs., Inc.*, 38 F.3d 1289, 1297 (2d Cir. 1994) (applying New