JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff-appellant, Guardian Technology, Inc., appeals the judgment of the Cuyahoga County Court of Common Pleas granting the motion for summary judgment of defendants-appellees, Chelm Properties, Inc.; DCA Industrial Properties, Ltd.; DaimlerChrysler Corporation; Susan Sandelman, Trustee of the Nathan Jeffrey Trust and Susan Sandelman, Trustee of the Pasan Trust, contending that justiciable issues of fact precluded summary judgment on its claim against appellees for unjust enrichment. Finding no merit to appellant's appeal, we affirm.
 {¶ 2} On July 24, 2000, appellant filed suit against appellees, seeking payment for a fire system it had installed in a commercial building located in Solon, Ohio. The most recent occupant of the building, Tri-Tech Plastics, LLC ("Tri-Tech"), had contracted with appellant to install the new fire system to accommodate Tri-Tech's intended use of the premises for the storage of plastic raw materials and finished product. Tri-Tech went out of business and vacated the premises, however, without paying appellant for its work. Because appellant could not recover from Tri-Tech, it sought recovery from appellees, who have ownership or leasehold interests in the property, on a theory of unjust enrichment.[1]
 {¶ 3} Appellees subsequently filed a motion for summary judgment, asserting that appellant could not prove the elements of its unjust enrichment claim. On November 6, 2001, the trial court entered summary judgment in favor of appellees.
 {¶ 4} Appellant timely appealed, raising one assignment of error for our review. Appellant asserts that the trial court erred by granting appellees' motion for summary judgment as to Guardian's unjust enrichment claim.
 {¶ 5} Summary judgment is appropriate when: 1) there is no genuine issue of material fact, 2) the moving party is entitled to judgment as a matter of law, and 3) after construing the evidence most favorably for the party against whom the motion is made, reasonable minds can reach only a conclusion that is adverse to the nonmoving party. Zivich v.Mentor Soccer Club, Inc. (1998), 82 Ohio St.3d 367, 369-370; Temple v.Wean United, Inc. (1977), 50 Ohio St.3d 317, 327. To obtain a summary judgment under Civ.R. 56(C), the moving party bears the initial responsibility of informing the court of the basis for the motion and identifying those portions of the record which support the requested judgment. Vahila v. Hall (1997), 77 Ohio St.3d 421, 430. If the moving party discharges this initial burden, the party against whom the motion is made then bears a reciprocal burden of specificity to oppose the motion. Id. See, also, Mitseff v. Wheeler (1988), 38 Ohio St.3d 112. We review the trial court's judgment de novo and use the same standard that the trial court applies under Civ.R. 56(C). Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105; Renner v. Derin Acquisition Corp. (1996), 111 Ohio App.3d 326, 333.
 {¶ 6} This Court set forth a synopsis of the law of unjust enrichment in Donovan v. Omega World Travel, Inc. (Oct. 5, 1995), Cuyahoga App. No. 68251:
 {¶ 7} "Generally speaking, a claim for unjust enrichment lies whenever a benefit is conferred by a plaintiff upon a defendant with knowledge by the defendant of the benefit and retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment. Hambleton v. R.G. Barry Corp. (1984), 12 Ohio St.3d 179,183; Katz v. Banning (1992), 84 Ohio App.3d 543, 552. * * * Civil liability may be imposed where one party retains a benefit from another's labors. Shaw v. J. Pollock Co. (1992), 82 Ohio App.3d 656, 662, citing to Rice v. Wheeling Dollar Savings Trust (1951), 155 Ohio St. 391. This implied obligation (i.e., quasi contract) is derived from the equitable principle `based on the moral obligation to make restitution which rests upon a person who has received a benefit which, if retained by him, would result in inequity and injustice.' Rice, supra at 398. In order to prevent such unjust enrichment the law implies a promise to pay a reasonable amount for services in the absence of a specific contract.Thomas Boles v. Burns (Mar. 31, 1994), Cuyahoga App. No. 64995." (Emphasis added).
 {¶ 8} As an initial matter, we reject appellees' argument that appellant's unjust enrichment claim is barred as a matter of law because Tri-Tech, rather than appellees, contracted with appellant for installation of the fire system. As noted by the Tenth Appellate District in Nationwide Heating Cooling, Inc. v. K C Construction (Sept. 10, 1987), Franklin App. No. 87AP-129:
 {¶ 9} "As a general rule, when services are performed under an express contract, legal action is confined to the parties to the contract. Consequently, third persons, even if benefitted by the work, cannot be sued on an implied contract or on unjust enrichment to pay for the benefit, because an implied contract does not arise against the one benefitted by virtue of a special contract with other persons. See 66 American Jurisprudence 2d, Restitutions, Section 60.
 {¶ 10} "However, that rule is not without exception. Circumstancesmay exist to support an unjust enrichment claim against a noncontractingthird-party who benefits from the uncompensated work of one of theparties to the contract. * * *" (Emphasis added).
 {¶ 11} Thus, in Kazmier v. Thom (1978), 63 Ohio App.2d 29, for example, the Sixth District Court of Appeals reversed an award of summary judgment in favor of the defendants on the plaintiff's claim for unjust enrichment. In Kazmier, the plaintiff installed a chain-link fence on the lessor's property pursuant to a contract with the lessee. When he was not paid for his work, the plaintiff sued the property owner (as lessor) and the lessee's alleged business partner (who was not a party to the contract with the plaintiff) on a theory of unjust enrichment. The trial court granted summary judgment in favor of the defendants. The Sixth District reversed on appeal, however, holding that there was an issue of fact regarding whether the owner's land had increased in value due to the improvements installed by the plaintiff and an issue of fact regarding the relationship between the lessee and his partner.
 {¶ 12} Similarly, in Andy's Glass Shops v. Leelanau Realty
(1977), 50 Ohio App.2d 355, the lessor owned property that it leased to the lessee. During the term of the lease, the lessee contracted with the plaintiff to replace a broken window. Despite a term in the lease which required the lessee to replace all broken windows, the lessee abandoned the premises without paying the plaintiff for its work. The plaintiff sued the owner/lessor of the property on a theory of unjust enrichment. On appeal, the First District Court of Appeals reversed the award of summary judgment in favor of the lessor, holding that the plaintiff's services had preserved the value of the lessor's property and thus, had conferred a benefit upon the lessor. See, also, H. Bridges Landscaping Paving, Inc. v. Lane Son Paving, et al. (Mar. 4, 1986), Franklin App. No. 85AP-282.
 {¶ 13} The case law is clear that a claim for unjust enrichment is not based on an actual contract but on a quasi-contract, i.e., a contract implied in law. In Novomont Corp. v. The Lincoln Electric Co. (Nov. 1, 2001), Cuyahoga App. No. 78389, quoting Caras v. Green Green (June 28, 1996), Montgomery App. Nos. 14943 15089, this court explained:
 {¶ 14} "In contracts implied in law there is no meeting of the minds, but civil liability arises out of the obligation cast by law upon a person in receipt of benefits which he is not justly entitled to retain and for which he may be made to respond to another in an action in the nature of assumpsit. Contracts implied in law are not true contracts; the relation springing therefrom is not in a strict sense contractual but quasi-contractual or constructively contractual.
 {¶ 15} "Quasi-contract developed from the desire of the law to bring about justice without any reference to the intention of the parties, and sometimes contrary to their intention. The principle upon which they are founded is prevention of unjust enrichment, and the remedy provided is by an action as though it were upon a contract.
 {¶ 16} "A quasi-contract is a legal fiction that does not rest upon the intention of the parties, but rather on equitable principles in order to provide a remedy. * * *
 {¶ 17} "A claim for unjust enrichment arises when one person has unfairly benefitted from the services of another. In that event, courts have adopted a legal fiction, quasi-contract, to provide a remedy allowing the aggrieved party to seek recovery for as much as he deserves. * * *" (Citations omitted).
 {¶ 18} Similarly, in Reisenfeld Co. v. The Network Group, Inc. (C.A.6, 2002), 277 F.3d 856, the Sixth Circuit Court of Appeals, interpreting Ohio law, recently stated, "a quasi-contractual obligation is one that is created by the law for reasons of justice, without any expression of assent and sometimes even against a clear expression of consent." Id. at 860. Thus, in Reisenfeld, the Sixth Circuit concluded that a third party benefitted by a contract but not a party to the contract can indeed be sued on a theory of unjust enrichment.
 {¶ 19} In order to recover under a theory of unjust enrichment, a plaintiff must demonstrate: 1) a benefit conferred by the plaintiff upon the defendant; 2) knowledge by the defendant of such benefit; and 3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment. Hambleton,12 Ohio St.3d at 183, citing Hummel v. Hummel (1938), 133 Ohio St. 520, 525.
 {¶ 20} In Reisenfeld, which involved facts similar to this case, a sub-broker of real estate sought money from a property owner for commissions the broker had not paid him. Although there was a contract between the property owner and the broker, and a separate contract between the broker and the sub-broker, there was no contract between the sub-broker and the owner, so the sub-broker sued the owner on a theory of unjust enrichment. The district court granted summary judgment for the property owner and the sub-broker appealed.
 {¶ 21} In reversing the grant of summary judgment in favor of the owner, the Sixth Circuit noted that there was no dispute with respect to the first two elements of the sub-broker's unjust enrichment claim: 1) it was clear the sub-broker's work benefitted the owner; and 2) the owner knew what the sub-broker was doing. With respect to the third element — whether it would be unjust for the owner to retain the benefit it had received without paying for it — the Sixth Circuit held that under circumstances where the property owner has received a benefit but not paid the subcontractor for that benefit, it is not unjust to require the owner to pay for the benefit. Accordingly, the Sixth Circuit reversed the grant of summary judgment in favor of the owner.
 {¶ 22} Thus, as Reisenfeld makes clear, if appellant demonstrated a genuine issue of material fact regarding each element of its unjust enrichment claim, the trial court's grant of summary judgment in favor of appellees was in error. Although factually very similar to Reisenfeld,
however, this case differs significantly because appellant did not demonstrate genuine issues of material fact regarding each element of its claim.
 {¶ 23} Appellees' motion for summary judgment set forth the following facts. Appellees The Nathan Jeffrey Trust and The Pasan Trust are successors-in-interest to Fair Isle Properties, Inc., the owner of the premises. In October 1970, Fair Isle executed a lease agreement with appellee Chrysler Corporation (n/k/a DaimlerChrysler) for the premises. DaimlerChrysler occupied and used the premises as a warehouse and distribution facility from December 1970 through August 1996, when it vacated the premises. The overhead fire sprinkler system at the premises was satisfactory for DaimlerChrysler's use of the premises as a warehouse and distribution facility.
 {¶ 24} In April 1997, DaimlerChrysler, as landlord, and appellee DCA Industrial Properties, Ltd. ("DCA"), as tenant, executed a sublease for the premises. Subsequently, in December 1998, DCA, as landlord, and Solon Improvement, LLC, as tenant, executed a sub-sublease agreement for the premises. Pursuant to the terms of a guaranty attached to the sub-sublease, Tri-Tech Plastics, LLC and Tri-Tech Holdings, LLC ("Tri-Tech") and Wayne Rothman guaranteed Solon's obligations under the sub-sublease. Solon, Tri-Tech and Rothman entered into the sub-sublease and guaranty with the intention that Tri-Tech would occupy the premises and operate a custom injection plastic molding business therein.
 {¶ 25} With respect to the condition of the premises, Section 5.2 of the sub-sublease provided that following Tri-Tech's completion of plans and specifications for the construction of the premises and DCA's approval of those plans, "Landlord (DCA) shall perform the work described in Exhibit "E-1" ("Landlord's Work") substantially in accordance with the Plans and Specifications." Paragraph 13 of Exhibit E-1, Description of Landlord's Work, provided that "Building will conform to state and local fire codes."
 {¶ 26} Kerry Chelm, a member of DCA and president of Chelm Properties, Inc. (the property manager for DCA), stated in an affidavit attached to appellees' motion for summary judgment:
 {¶ 27} "The existing sprinkler system at the premises was adequate to support the use of the premises as a warehouse and distribution facility. As is reflected in a letter dated December 16, 1998 from the Solon Fire Department to Chelm, * * * the Solon Fire Department concluded that the existing sprinkler system at the premises was inadequate to accommodate Tri-Tech's requirements for storage of plastic materials and products under the standard of the Solon fire code, and that changes to the overhead sprinkler system, to be approved by the City of Solon, were required prior to Tri-Tech taking occupancy. DCA and Chelm informed Tri-Tech of the City of Solon's concerns regarding the sprinkler system."
 {¶ 28} In the letter referred to in Chelm's affidavit, Lieutenant Garry Nemeth of the Solon Fire Department informed appellee Chelm:
 {¶ 29} "I have reviewed the original sprinkler plans for 31115 Aurora Road, as well as the information you provided. The storage of plastic product and raw material is governed by NFPA 231 Chapter 7. The storage proposed by Tri-Tech indicates the need for an overhead density of .8gpm/square ft. with a design area of 2500 square ft. An ESFR system is another option.
 {¶ 30} "The original system is a pipe schedule system. I do not have the software to calculate a density for the overhead supply. You will need to hire a sprinkler contractor or fire protection designer to determine the extent of your sprinkler upgrade. The following additional information will be required for the design of the system upgrade:
 {¶ 31} "1.Type of packaging of pellets and finished goods. Indicate whether plastic is in cardboard and if so, how much.
 {¶ 32} "2.Is polypropylene expanded or non-expanded?
 {¶ 33} "3.Type of stacking of product, i.e., pallets and amount of product per pallet.
 {¶ 34} "4.Aisle width and separation of storage areas.
 {¶ 35} "In summary, an upgrade of the overhead sprinkler system will be required prior to occupancy. The extent of the upgrade must be determined by a fire protection engineer. Upgrade plans must be approved by the Fire Department prior to commencement of work."
 {¶ 36} The affidavit of Mark Heuser, a former partner and shareholder of Tri-Tech, attached to appellees' motion, stated that upon being informed by DCA that alterations to the overhead sprinkler system were necessary prior to taking occupancy of the premises, Tri-Tech engaged appellant to propose modifications to the sprinkler system. Appellant recommended that Tri-Tech install an Early Suppression Fast Response (ESFR) sprinkler system at the premises to satisfy the requirements of the City of Solon fire code. In January 1999, Tri-Tech contracted appellant to install the ESFR system within the storage areas of the premises. Appellant completed installation of the ESFR system and Tri-Tech took occupancy of the premises in February 1999. In July 1999, Tri-Tech went out of business. It vacated the premises in August 1999, without paying appellant for its work.
 {¶ 37} In granting appellees' motion for summary judgment, the trial court found that appellant had not conferred a benefit upon appellees because "reasonable minds could only conclude that the installation of the fire equipment was specific to the tenant and could not benefit the landlord." Appellant contends that the trial court erred in reaching this conclusion because the sub-sublease required DCA to pay for the ESFR system. In support of its argument, appellant cites Section 5.2 of the sub-sublease, which required DCA to perform the work described in Exhibit E-1 to the sub-sublease. Paragraph 13 of Exhibit E-1 stated that the "Building will conform to state and local fire codes." Appellant claims that because the City of Solon required installation of the ESFR system before Tri-Tech could occupy the premises, Section 5.2 and Exhibit E-1 of the sub-sublease obligated DCA to pay for the system and, therefore, appellant's installation of the system conferred a benefit upon DCA because it permitted DCA to fulfill one of its requirements under the sub-sublease. We disagree with appellant's interpretation of the sub-sublease.
 {¶ 38} Ohio courts have recognized the inherent contractual nature of lease agreements. Russell Realty Co. v. Feghali (1997),121 Ohio App.3d 291, 294, citing Timber Ridge Invest. Ltd. v. Marcus
(1995), 107 Ohio App.3d 174. In construing and interpreting lease provisions, courts apply traditional contract principles. Id. The interpretation of a contract is a matter of law. Saydell v. Geppetto'sPizza and Ribs Franchise System, Inc. (1994), 100 Ohio App.3d 111, 118. The language of a contract will be given its ordinary meaning unless manifest absurdity results or the overall contents of the contract provide evidence that some other meaning was intended. Where a contract is clear and unambiguous, the court must give effect to the express terms when determining the rights and obligations of the parties. Id.
 {¶ 39} Here, the plain language of the contract did not require DCA to pay for the ESFR system. Section 5.2 and Exhibit E-1 of the sub-sublease required DCA to make the improvements listed on Exhibit E-1 prior to delivering possession of the premises to Tri-Tech. Included in those Phase I improvements was the requirement that the "building shall conform to state and local fire codes." The building was, in fact, fire code compliant prior to Guardian's installation of the ESFR system. Indeed, the affidavit of Gary Narks, appellant's assistant vice-president involved in the ESFR installation project, attached to appellant's brief in opposition to appellees' motion for summary judgment, averred, "the fire suppression system located in the premises prior to Guardian's work complied with the City of Solon's fire code."
 {¶ 40} Thus, it is apparent that DCA met its obligation to deliver a building in compliance with the fire code. The sub-sublease did not require DCA to pay for the conversion of the premises to suit Tri-Tech's plastics manufacturing operation. Lt. Nemeth's letter makes clear that it was the "storage [of plastic materials and products] proposed by Tri-Tech" that necessitated the sprinkler system modifications. Because the ESFR system was required solely to support Tri-Tech's plastics operation, the responsibility for paying for the system fell to Tri-Tech, not DCA. Tri-Tech apparently knew this because Tri-Tech, rather than DCA, contracted with appellant for installation of the system.
 {¶ 41} Appellant also contends that the trial court erred in finding that the ESFR system did not confer a benefit upon appellees because the affidavit of Gary Narks raised a genuine issue of material fact regarding whether appellees realized a benefit from the installation of the ESFR system.
 {¶ 42} The affidavit of Kerry Chelm, appended to appellees' motion for summary judgment, averred that the existing sprinkler system at the premises prior to the installation of the ESFR system was adequate to support the use of the premises as a warehouse and distribution facility. In addition, the affidavit of James Sharkey, senior manager of corporate real estate for DaimlerChrysler, averred that the ESFR fire system was of no benefit to appellees because it was installed specifically to accommodate Tri-Tech's manufacturing operation. Thus, in support of their motion for summary judgment, appellees produced evidence that appellant's work failed to confer a benefit upon them because: 1) the premises had an adequate fire suppression system prior to appellant's installation of the ESFR system; and 2) the ESFR system was required solely by Tri-Tech to support its plastics manufacturing operation.
 {¶ 43} In opposition to appellees' motion, Narks' affidavit stated, in pertinent part:
 {¶ 44} "8. A city fire code provides the minimum fire protection standards which the city requires for the protection of every building and for the safety of the people who live and work in those buildings.
 {¶ 45} "9. The fire suppression system located in the premises prior to Guardian's work complied with the City of Solon's fire code. This means only that it provided the minimum safety for the people who worked in that building.
 {¶ 46} "10. The ESFR system Guardian installed at the premises provides greater protection to the people and property that occupy that building. The ESFR system will protect all subsequent tenants of the premises, whatever the nature of their business.
 {¶ 47} "11. Accordingly, the ESFR system installed by Guardian provided a direct benefit to the landlord of the premises, DCA Industrial Properties and Chelm Properties, in that the building which they are leasing provides greater protection to the person and property of all subsequent tenants. Even if no tenants currently occupy the building, the landlord receives a benefit from greater fire safety protection."
 {¶ 48} Civ.R. 56(E) provides in pertinent part that "supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. * * *."
 {¶ 49} We find that the trial court was not required to consider the portion of the Narks affidavit quoted above because Narks' affidavit did not indicate that he was an expert qualified to render an opinion regarding fire codes or fire protection and the affidavit contained only conclusory statements and legal conclusions without sufficient supporting facts. See Crawford v. Millar Elevator Service, Co. (May 11, 2000), Cuyahoga App. No. 77277. Absent factual support, an affidavit which merely sets forth a legal conclusion or opinion does not meet the requirements of Civ.R. 56(E). Id., citing Stamper v. Middletown HospitalAssoc. (1989), 65 Ohio App.3d 65, 69. Even a properly qualified expert may not give testimony which merely contains conclusions of law, without supporting facts. Davis v. Schindler Elevator Corp. (1994),98 Ohio App.3d 18, 21. "[M]ere conclusory statements and allegations are insufficient to raise genuine issues of material fact." Crawford, supra, citing Jackson v. Alert Fire Safety Equipment, Inc. (1991),58 Ohio St.3d 48, 52; Wilson v. Lynch Lynch Co., L.P.A. (1994),99 Ohio App.3d 760, 769; Jones v. H. T. Enterprises (1993),88 Ohio App.3d 384, 390.
 {¶ 50} Without Narks' affidavit, it is apparent that appellant offered no evidentiary materials opposing appellees' evidence that the ESFR system did not provide them with any benefit. Therefore, no issue of material fact exists as to whether appellant conferred a benefit on appellees. Accordingly, because appellant did not demonstrate each element of its unjust enrichment claim, the trial court did not err in granting appellees' motion for summary judgment regarding appellant's claim.
 {¶ 51} Appellant's assignment of error is overruled and the judgment of the trial court is affirmed.
It is ordered that appellees recover of appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES J. SWEENEY, J. and DIANE KARPINSKI, J. concur.
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. II, Section 2(A)(1).
[1] Appellant's complaint (Case No. 413626) was subsequently consolidated with another complaint against appellees brought by two contractors who performed electrical and construction work at the premises pursuant to contracts with Tri-Tech but were not paid for their labor. J. Lombardo Electrical Construction, Inc. v. Tri-Tech Plastics,LLP, Case No. 386545. The trial court rendered final judgment in both cases on November 6, 2001; none of the parties appealed the judgment entered in Case No. 386545 and, thus, that case is not part of this appeal.