[Cite as *Meridien Marketing Group, Inc. v. J&E Bldg. Group, Inc.*, 2011-Ohio-4872.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
### MIAMI   COUNTY

MERIDIEN MARKETING GROUP, INC.    :
dba MERIDIEN STONE                    :          Appellate Case No. 2011-CA-02
                                      :
    Plaintiff-Appellee               :          Trial Court Case No.   09-CV-948
                                      :
v.                                    :
                                      :          (Civil Appeal from
J&E BUILDING GROUP, INC., et al.      :           Common Pleas Court)
                                      :
    Defendant-Appellant        :
                                      :

. . . . . . . . . . .

O P I N I O N

Rendered on the 23rd day of September, 2011.

. . . . . . . . .

JOSE M. LOPEZ, Atty. Reg. #0019580, and JONATHAN S. ZWEIZIG, Atty. Reg.
#0069381, Lopez, Severt & Pratt Co., L.P.A., 18 East Water Street, Troy, Ohio 45373
        Attorneys for Plaintiff-Appellee

BRYAN K. STEWART, Atty. Reg. #0042122, Stewart & Stewart Lawyers, Ltd., 104 West
Main Street, Tipp City, Ohio 45371
        Attorney for Defendant-Appellant

. . . . . . . . .

HALL, J.

{¶ 1}   Defendant-appellant UKP LLC hired defendant J&E Building Group, Inc., to build a hotel in Troy, Ohio. UKP agreed to pay J&E $4,447,942 but, because of problems with the construction, ended up paying about $20,000 less. Under the construction

specifications, J&E was to install (among other things) custom-designed wood vanity-bases for sleeping room baths and custom-designed granite pieces, which included vanity countertops and public-area countertops, window sills, and sleeping-room shelves. J&E selected plaintiff-appellee Meridien Stone to supply the vanity bases and granite pieces and agreed to pay $63,579.49. J&E paid Meridien a $29,820.18 pre-delivery deposit. On delivery day, J&E gave Meridien a check for the balance. But problems with the order were immediately discovered–twenty-four shelves were broken, three sills were the wrong color, three countertops were not polished, and one countertop was missing. That same day, UKP's managing member, Upendra Patel, sent an email to the bank that asked it to stop payment on the check J&E had given Meridien "IMMEDIATELY," explaining, "Granite came in today and many of the pieces are broken and we need to work this out before ANY further payment is issued them." (Plaintiff's Exhibit 5). Meridien did not dispute the problems, and it credited J&E $1,332.71 for the broken granite and wrong-colored sills and did not charge it for the missing countertop. After the adjustments were made, J&E owed Meridien $32,426.61. But J&E did not give Meridien another check, nor did Patel ask the bank to lift the stop-payment order on the one it had given Meridien.

{¶ 2} At some point not long after building the hotel, J&E went out of business. When Meridien's president, David Murray, spoke with Elenora Vaughn, J&E's president, about resolving the payment issue, she told him that J&E was no longer in business. She said that she, her husband (J&E's vice president), and son Jeff had moved to Florida. Elenora explained that they had put around $640,000 of their own money into the business before they lost it. Elenora told Murray that the bank had taken everything and J&E had no money–no

money to pay Meridien or to pay an attorney. J&E's site supervisor, Jeff Vaughn, sent Patel an email which said essentially the same thing that Elenora told Murry: banks held J&E's assets and J&E had no money to pay an attorney to contest any legal claims.

{¶ 3} On October 8, 2009, Meridien filed suit against J&E and UKP, seeking to recover the amount it was owed. Meridien asserted a breach-of-contract claim against J&E and, alternatively, a claim for unjust enrichment against UKP. J&E did not respond and did not file an appearance. The case went to a bench trial solely on the unjust-enrichment claim. The trial court found that J&E is insolvent and unavailable for judgment, and the court ordered UKP to pay Meridien the full amount J&E still owed, finding that this amount is both the reasonable value of the material Meridien provided and the value of the benefit UKP received.

{¶ 4} UKP appealed and now assigns two errors to the trial court. In the first, UKP argues that the trial court should have dismissed the unjust-enrichment claim because Meridien failed to present admissible evidence that J&E is insolvent and unavailable for judgment. Alternatively, in the second assignment of error, UKP argues that the amount the court ordered it to pay Meridien is unlawful because it exceeds the unpaid balance of UKP's contract with J&E and because it includes Meridien's profit.

## 1. UKP's Liability to Meridien

{¶ 5} A subcontractor may not assert an unjust-enrichment claim against a property owner if the possibility exists that, for the same work or material supplied, the subcontractor can also recover from the contractor or the property owner might also have to pay the

contractor. *Booher Carpet Sales, Inc. v. Erickson* (Oct. 2, 1998), Greene App. No. 98-CA-0007; *BFI Waste Systems of Ohio, Inc. v. Professional Constr. and Safety Servs., Inc.*, Lorain App. No. 06CA008972, 2008-Ohio-1450, at ¶7, quoting *Booher*. In other words, no danger may exist of double recovery or double payment. To ensure that neither danger does exist, "[w]hen a subcontractor is pursuing an action against a property owner it is necessary that the general contractor be unavailable for judgment and unable to pursue the owner for the money that the subcontractor is seeking." *Booher*; *BFI Waste Systems*, at ¶7.

{¶ 6} UKP argues that the trial court erred when it concluded that neither danger exists in this case.[1] Meridien presented sufficient evidence that J&E is insolvent and unavailable for judgment. In fact, UKP contends, the evidence supports the contrary.

{¶ 7} The evidentiary standard in civil cases is this: "a judgment supported by some competent, credible evidence going to all the essential elements of the case must be affirmed." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, at ¶26 (Citation omitted.). We conclude that competent, credible evidence supports the trial court's finding.

---

[1]The first assignment of error assigns error to the trial court's failure to dismiss Meridien's unjust enrichment claim. Before presenting its defense, UKP orally moved "to dismiss or [] for a directed verdict," asserting that Meridien failed to prove that J&E is unavailable for judgment. (Tr. 128). As Meridien argues in its brief, and UKP concedes in reply, "[a] motion for directed verdict is inappropriate in a bench trial." *Miami Valley Hospital v. Payson* (Dec. 7, 2001), Montgomery App. No. 18736 (Citation omitted.). Such a motion made in a non-jury trial is construed as a motion for involuntary dismissal under Civ.R. 41(B). Id. Civ.R. 41(B)(2) provides that "when a motion to dismiss is made, the trial court can choose either to dismiss the action or to proceed with further evidence," so a court that chooses the later path does not err. *Pacher v. Invisible Fence of Dayton*, 154 Ohio App.3d 744, 2003-Ohio-5333, at ¶34. In the present case, the trial court overruled UKP's motion, choosing instead to hear its evidence. The court did not err by doing so.

On page one of its reply brief, UKP says that "the trial court did make an incorrect finding upon consideration of the evidence presented with respect to Appellee proving that the general contractor, J&E Building group [*sic*], was not collectible." UKP argues that Meridien presented no evidence that J&E is unavailable for judgment. Therefore we consider the sufficiency of the evidence supporting the trial court's unavailability finding. See id. ("What we think what [cross-appellant] is actually challenging is the legal sufficiency of the evidence supporting the trial court's judgment," not its failure to dismiss under Civ.R. 42(B).).

**{¶ 8}** Patel testified that Jeff Vaughn sent him an email (the same email we referred to above) in which Vaughn said that J&E's assets were being held by banks and that J&E had no money to pay an attorney to contest any claims. Over UKP's hearsay objection, the trial court admitted Patel's testimony, though it excluded the email itself on foundation grounds. In its written decision, the court cites the email statements in support of its finding that J&E is insolvent and unavailable for judgment. The court notes that, in addition to the fact that no credible evidence presented suggests that the statements are false, all the circumstantial evidence points to their truth.[2]

**{¶ 9}** UKP contends that by relying on these statements the trial court violated the hearsay rule-of-evidence. Once this testimony is excluded, UKP asserts, no supporting evidence is left. UKP is incorrect.

**{¶ 10}** As we said above, Meridien's president, David Murray, testified that he had informal conversations with Elenora Vaughn, J&E's president, to see if they could resolve the payment issue. This is Murray's pertinent testimony:

**{¶ 11}** "Q Are you familiar with who Elenora Vaughn is?

**{¶ 12}** "A Oh yes, yes.

**{¶ 13}** "Q Have you had an opportunity to speak with her?

**{¶ 14}** "A I have.

---

[2]We note too that the trial court also stated other reasons why no danger exists of double recovery or double payment. The court pointed out that J&E, still a party, did not file an answer, did not make an appearance, and did not participate in the trial. Further, said the court, Meridien no longer seeks a judgment against J&E. Finally, the court pointed out that at the conclusion of the case all the issues will be fully resolved and res judicata will apply to bar further recovery or payment among the three parties.

{¶ 15} "Q About this case?

{¶ 16} "A I have. I spoke to her about this case and about J & E Builders and J & E Custom Homes, as well.

{¶ 17} "Q Did you have an opportunity to speak with her as to whether or not J & E Building Group is still out there * * *, open for business?

{¶ 18} "A I spoke to Elenora about that very point, and asked her the question, 'Is J & E still in business?', and she said, 'No we're not.'

{¶ 19} "* * *

{¶ 20} "Q * * * [D]id she speak to you as [to] the financial condition of J & E Building?

{¶ 21} "A She did. She said that they were no longer in business and were–they had no money and had all moved to Florida–that being–all being Jack and Elenora Vaughn, the two, as I understand, owners President of J & E [] moved to Florida. Uh, they were out of business, and [] their son, Jeff, had also moved to Florida, had lost his home, that they lost the business, that they'd put some $640,000.00 of their own money into the business before it went out of business, and that they were–didn't have [] enough money to perform–[] do any legal proceedings in anyway.

{¶ 22} "Q Did she advise you as to whether or not the bank had taken everything?

{¶ 23} "A [] I think her words were, 'they've ta–taken everything'."

{¶ 24} (Tr. 71-74). Murray's testimony is credible and competent evidence that supports the trial court's finding that J&E is insolvent and unavailable for judgment.

{¶ 25} UKP makes much of the fact that no evidence was presented that J&E has filed

for bankruptcy. In fact, UKP points out, Patel, a practicing attorney, testified that he searched court records in the Southern District of Ohio and the Middle District of Florida and found no record of J&E's bankruptcy. And Murray testified that Elenora told him that J&E has not filed for bankruptcy. But evidence that a party has filed for bankruptcy is merely some evidence that the party is insolvent. See *Coyne v. Hodge Const., Inc.*, Medina App. No. 03CA0061-M, 2004-Ohio-727, at ¶6. Such evidence is neither conclusive of nor necessary for a finding of unavailability for judgment.

{¶ 26} The first assignment of error is overruled.

## 2. The Amount of UKP's Liability to Meridien

{¶ 27} Alternatively, UKP argues that the amount the trial court determined to be its liability ($32,426.61) is unlawfully high for two reasons. First, UKP contends that it cannot be liable for more than $20,000, the unpaid balance of its contract with J&E, minus the amount it spent to complete that contract. Second, UKP contends that a party may not recover profit with an unjust-enrichment claim.

{¶ 28} A trial court has broad discretion when it fashions an equitable award. See *Jon Harmon Ents. Ltd. v. Kinsey*, Tuscarawas App. No. 2008 AP 12 0074, 2009-Ohio-5655, at ¶20-21. A reviewing court may not disturb the court's award unless it is unsupported by the evidence or otherwise constitutes an abuse of the court's discretion. See *Lauper v. Harold* (1985), 23 Ohio App.3d 168, 170; see, also, Id. at ¶19 (reviewing a quantum meruit award under the abuse-of-discretion standard), citing *Sandusky Properties v. Aveni* (1984), 15 Ohio St.3d 273, 275. An award constitutes an "abuse of discretion" if it is unreasonable, arbitrary,

or unconscionable. See *Blakemore v. Blakemore* (1983), 5 Ohio St. 3d 217, 219. We conclude that the award here is none of these.

A. *The amount of an owner's liability to a subcontractor*

{¶ 29} Abstracted, the situation in the present case is this: a third-party contracted with one party to provide work and material, and that party in turn contracted with another party to provide some of the material. The second party provided the material but the first party did not pay all it owed. The second party then sued the third party, the one who benefitted from the provided material. In the construction context, "when a property owner has not paid his general contractor the full amount originally bargained for under the contract and either the improvements are complete or enough funds remain under the contract to compensate the subcontractor and to finish construction * * *, the owner enjoys, at the subcontractor's expense, an unfair windfall from whatever caused the general contractor to accept less than the agreed amount and breach its obligation to the subcontractor. The owner receives the benefits of the subcontractor's performance, but avoids paying anyone for it. In this situation, a finding of unjust enrichment is warranted." *Booher*.

{¶ 30} But "the extent of a homeowner's liability is limited to the amount of the contract price remaining unpaid after his home is completed according to the specifications of the original construction contract." *Booher*, citing *Blum v. Dawkins* (Fla.App.1996), 683 So.2d 163, 164.[3] A residence was built in *Booher*, but the same inequity would exist if this

---

[3]Stating this rule differently, we said in the following paragraph, "As a general rule, then, we conclude that a property owner who has contracted for either home improvements or for construction of a new home, is not liable to a subcontractor for any amount greater than the unpaid balance of the contract, minus the cost to complete the contract according to its terms." *Booher.*

situation arose in the commercial-construction context. Ohio courts have recognized this and have applied essentially the same rule in commercial context. See, *e.g.*, *Wickford Metal Prods. v. Tri-Village Church of Christ, Inc.* (Dec. 1, 1998), Licking App. No. 98CA47, citing *Steel Quest, Inc. v. City Mark Constr. Servs.* (Oct. 31, 1997), Hamilton App. No. C-960994. See, also, *Reisenfeld & Co. v. Network Group, Inc.* (C.A.6, 2002), 277 F.3d 856, 861 ("Unreported Ohio Court of Appeals cases support the proposition that, in the contractor/subcontractor context, when the subcontractor is not paid by the contractor and the owner has not paid the contractor for the aspect of the job at issue, the subcontractor can look to the owner for payment under a theory of unjust enrichment."), citing *Ross-Co Redi Mix Co. v. Steveco, Inc.* (Feb.6, 1996), Pickaway App. No. 95CA3; *Brower Prods. Inc. v. Musilli* (May 21, 1999), Miami App. Nos. 98CA58 and 98CA59; and *Steel Quest*.

{¶ 31} UKP paid J&E around $20,000 less than the contract amount. UKP contends that to complete the hotel construction under the contract's specifications it spent around $10,000 on things like keeping a granite-installation crew at the site while replacement granite pieces were fabricated, purchasing the replacement granite, finishing the unfinished granite, and hiring a carpenter to make adjustments to the check-in counter because the granite countertop was too short. Therefore, argues UKP, while it may be liable to Meridien, its liability is limited to $10,000. But, while Patel's testimony supports UKP's contention, the trial court found that UKP did not present enough evidence for the court to find that it spent any amount to complete the contract. The court said that no evidence was presented to show, for example, when the installation crew arrived, or whether J&E ordered the correct length of granite for the check-in counter, or what UKP did with the three wrong-color sills, or whether

it was UKP or J&E that paid for the replacement granite, or whether J&E in fact ordered the missing granite countertop.

{¶ 32} A reviewing court must presume that the trial court's findings of fact are correct for the simple reason that the trial judge was the one "to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. Cleveland* (1984), 10 Ohio St.3d 77, 80. "[A] difference of opinion on credibility of witnesses and evidence is not" grounds for reversal. Id. at 81. Here the trial court, as finder of fact in a bench trial, was free to reject Patel's testimony about UKP's cost(s) to complete the hotel because it found the evidence insufficient or not credible. See *Jon Harmon*, at ¶20. We defer to the trial court's finding. Therefore we find that $20,000 remains unpaid under UKP's contract with J&E.

{¶ 33} But this does not mean that the trial court erred by awarding Meridien $12,426.61 more.

B. *An exception to the general rule of an owner's liability*

{¶ 34} A claim of unjust enrichment is a claim arising in equity. Equity here allows recovery when it would not be just to allow a benefitted party to keep the benefit without payment. See *Hambleton v. R.G. Barry Corp.* (1984), 12 Ohio St.3d 179, 183. The amount that the benefitted party ought to pay (and the amount the benefitting party ought to recover) depends on the balance of equities in the particular situation. The liability rule stated above represents Ohio courts' agreement that, ordinarily, it is just to limit an owner's liability to the amount that remains unpaid under the contract. But this is not just in all situations. We recognized this in *Booher*: "It would be foolhardy for us * * * to preclude any possibility of

some circumstance arising in which it would be unjust for the homeowner to avoid payment to the subcontractor on the grounds that expenses will exceed the remaining funds." *Booher*. We think such circumstance should be found here.

{¶ 35} On the day the granite arrived onsite, April 30th, 2009, J&E gave Meridien a check for the balance of what it owed under their contract. But UKP directly contacted the bank and had a stop payment order issued for the check. By doing so, UKP interposed itself in J&E and Meridien's contractual relationship and kept Meridien from what it was contractually owed, even though there may have been an issue about a credit adjustment for the broken marble pieces. But for UKP's stop payment request, at a time when J&E apparently had funds available, Meridien would have had all that it was owed, so it would not have had to file a claim against UKP to recover it. Whether or not UKP's direct involvement would have supported an independent, unclaimed cause of action for contractual interference, the trial court could have considered UKP's actions to justify holding UKP liable for all that J&E owed Meridien. The court could have concluded that, in this case, it is inequitable for the owner to avoid payment of the excess when the owner kept the subcontractor from receiving payment at a time when the general contractor had funds available.

C. *Profit*

{¶ 36} UKP also contends that the trial court improperly awarded Meridien the benefit of its bargain with J&E rather than the reasonable value of the supplied material. UKP asserts that Meridien is entitled only to the wholesale cost of the material, not the amount J&E agreed to pay. The trial court rejected this idea and so do we.

{¶ 37} We agree that a claim of unjust enrichment entitles a party to recover the

reasonable value of the benefit conferred, not necessarily the benefit of its bargain. See *Blue Chip Pavement Maint., Inc. v. Ryan's Family Steak Houses, Inc.*, Clermont App. No. CA2003-09-072, 2004-Ohio-3357, at ¶14. "The Court finds the reasonable value of the materials provided to UKP by Meridien to be $32,426.61." Decision in Favor of Plaintiff, filed December 30, 2010, at 9. We defer to the trial court's finding of "reasonable value." UKP fails to convince us that the reasonable value of the materials Meridien supplied can only be the materials' wholesale cost. Moreover, the above rule of recovery does not say that, in a particular case, a party may not recover the benefit of its bargain if the court finds such a recovery equitable.

{¶ 38} The trial court here had broad discretion to fashion an equitable award based on the facts as it found them. For the reasons discussed above, we cannot say either that any of the court's factual findings are erroneous or that the award itself is unreasonable, arbitrary, or unconscionable.

{¶ 39} The second assignment of error is overruled.

{¶ 40} The judgment of the trial court is affirmed.

. . . . . . . . . . . . .

DONOVAN and FROELICH, JJ., concur.

Copies mailed to:

Jose M. Lopez
Jonathan S. Zweizig
Bryan K. Stewart
Hon. Christopher Gee (for Hon. Jeffrey M. Welbaum)